## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINA
### (Norfolk Division)

**SUSAN AND STEPHEN CARLSON,**
**individually, and on behalf of others**
**similarly situated,**

       **Plaintiffs,**

**v.**             **Civil Action No. 2:12-cv-00255**

**LAW OFFICES OF SHAPIRO, BROWN &**
**ALT, LLP,**

**And**

**PROFESSIONAL FORECLOSURE CORPORATION**
**OF VIRGINIA,**

       **Defendants.**

## MEMORANDUM IN SUPPORT OF
## LAW OFFICE OF SHAPIRO, BROWN &
## ALT, LLP'S MOTION TO DISMISS COMPLAINT

Defendant Shapiro, Brown & Alt, LLP ("SBA"), by counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, submits this Memorandum in Support of its Motion to Dismiss the Complaint filed against it by Plaintiffs, Susan and Stephen Carlson, individually, and on behalf of others similarly situated ("Plaintiffs" or "the Carlsons").

### I.  INTRODUCTION

This case represents Plaintiffs' attempt to capitalize on the Virginia Supreme Court's recent decision in *Mathews v. PHH Mortgage Corp.*, 283 Va. 723, 724 S.E.2d 196 (Apr. 20, 2012), involving certain HUD regulations that require a face-to-face meeting between the mortgagee and mortgagor prior to foreclosure. Plaintiffs assert that they were entitled to such a

face-to-face meeting with Wells Fargo, their loan servicer, before SBA and Defendant

Professional Foreclosure Corporation of Virginia ("Professional") took any action to foreclose

on their loan.  Aside from the myriad of other problems plaguing Plaintiffs' attempts to certify a

class, the Complaint fails to allege a cause of action against SBA, the law firm employed by

Plaintiffs' lender to institute foreclosure proceedings under Plaintiffs' deed of trust, for any

failure or breach of duty that would render it liable under the FDCPA.  Because neither

Plaintiffs, nor the putative class members, have a claim against SBA, the class claims must be

dismissed.

SBA is a law firm.  Professional is a corporation organized to act as substitute trustee and

conduct foreclosure sales pursuant to the terms of deeds of trust and notes on which borrowers

have defaulted.  This case also involves three separate individual claims under the Fair Debt

Collection Practices Act, 15 U.S.C. §1692, et seq., against Professional and SBA in connection

with pre-foreclosure notices sent by SBA to the Plaintiffs.   The gravamen of these counts, by

and large, is the allegation that Wells Fargo was not the "owner" of the note, and as a result, the

notices of foreclosure were improper.  Noticeably absent is any assertion as to whom Plaintiffs

believes was the holder (not the owner) of the note or person entitled to enforce the loan, or any

assertion that some other entity claiming to be the "true holder" has made a claim or demand

upon Plaintiffs.  Plaintiffs admit to being in default under the terms of their loan.  Plaintiffs do

not claim that the secured party did not intend to proceed with foreclosure, or did not authorize

the foreclosure.   Nor do Plaintiffs identify how these alleged statements constitute material

representations that they relied on to their detriment.

The simple facts are that Plaintiffs failed to pay their mortgage debt and, as a result,

Wells Fargo, pursuant to its rights and duties as loan servicer, at the direction of the beneficiary

of the note under Virginia Code §8.3A-205(b), requested that Defendant SBA initiate foreclosure proceedings against them.  SBA and Professional sent proper pre-foreclosure letters and notices, required by Virginia statute and HUD regulation to Plaintiffs.  The letters did not contain material misrepresentations.  Moreover, Defendants were acting at the request of Wells Fargo and were, accordingly, entitled to rely on Wells Fargo's direction to foreclose.  To the extent that the servicer (Wells Fargo) failed to meet certain requirements of the HUD regulations, that failure cannot be laid at the door of SBA.  Accordingly, the Complaint must be dismissed with prejudice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

1.      Plaintiffs are homeowners who reside in Virginia Beach, Virginia.  They have owned their home together since 1994.  (Compl. ¶¶ 4, 8.)

2.      On Febuary 22, 2002, Plaintiffs refinanced their mortgage and obtained a loan ("Loan") guaranteed by the Federal Housing Administration ("FHA") for $198,432.  The original lender on the note ("Note") was SIB Mortgage Corporation.  (Compl. ¶ 8.)

3.      The Note was secured by a deed of trust ("Deed of Trust") recorded in the Clerk's Office of the Circuit Court of the City of Virginia Beach.  *Id.*  The Note and Deed of Trust are attached as exhibits to the Complaint.  (Exhibits A and B to Complaint).

4.      Plaintiffs' loan is serviced by Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A. ("Wells Fargo").  (Compl. ¶ 9.)  As servicer, Wells Fargo conducted customary servicing functions, such as collecting payments, communicating with Plaintiffs, assessing late fees, and the like.  *Id.*  Plaintiffs made their loan payments to Wells Fargo.  *Id.*

5.      In early 2010, Plaintiffs negotiated with Wells Fargo to obtain a loan modification that lowered the interest rate on their mortgage from 7% to 5.375%.  (Compl. ¶ 10.)

6.     Due to the downturn in the economy, Plaintiffs experienced financial difficulties and turned to Wells Fargo for assistance.  (Compl. ¶¶ 9, 11.)  However, they were unable to reach any arrangement with Wells Fargo and fell behind on their loan payments.  (Compl. ¶¶ 13-14.)

7.     Defendant Shapiro Brown & Alt, LLP ("SBA"), formerly known as Shapiro & Burson, LLP, is a law firm with offices in Virginia Beach, Virginia.  Plaintiffs assert that SBA's practice includes the collection of debts. (Compl. ¶¶ 5, 15.)

8.     Plaintiffs assert that Defendant Professional is a company whose sole purpose is to serve as the substitute trustee under deeds of trust securing loans that are referred to SBA for foreclosure.  (Compl. ¶6.)  As substitute trustee, Professional regularly conducts foreclosure sales.  *Id.*  The Complaint alleges that Professional is the "alternate voice and alter ego" of SBA. *Id.*

9.     On June 15, 2011, SBA sent a letter to Plaintiffs advising them that the Loan had been referred to SBA for foreclosure.  (Compl. ¶ 31.)  A copy of the June 15, 2011 letter is identified as being attached to the Complaint as Exhibit C.  However, it does not appear that Exhibit C was filed with the Complaint.  Accordingly, a copy of the June 15, 2011 letter is attached hereto as **Exhibit 1**.  The June 15, 2011 letter identified the creditor as Wells Fargo. (Compl. ¶ 34.)

10.     The June 15, 2011 letter also stated that the note or other evidence of indebtedness was "unavailable at this time."  (Compl. ¶ 38.)

11.     At the time they received the June 15, 2011 letter, Plaintiffs were in default on their Loan.  (Compl. ¶ 33.)

12.     On or about January 5, 2012, Plaintiffs received correspondence from SBA stating that the mortgage secured by the property occupied by Plaintiffs was about to be foreclosed on and that ownership of the property would be transferred to "GOVERNMENT LOAN SECURITIZATION TRUST 2011-FV1 probably within the next 60 to 90 days." (Compl. ¶ 42.)  A true copy of the January 5, 2012 letter is attached hereto as **Exhibit 2**.[1]  This scheduled foreclosure was cancelled.

13.     On or about February 16, 2012, Plaintiffs received a letter from SBA indicating that their home would be sold at a foreclosure sale on March 7, 2012.  (Compl. ¶ 43.)  Enclosed with the correspondence was an Appointment of Substitute Trustee that stated "U.S. Bank National Association, as co-trustee for the GOVERNMENT LOAN SECURITIZATION TRUST 2011-FV1 is the present holder or authorized agent of the holder of the Note secured by the below described Deed of Trust."  *Id.*  A true copy of the February 16, 2012 letter is attached hereto as **Exhibit 3**.  This scheduled foreclosure was cancelled.

14.     Subsequently (the Complaint does not identify precisely when), Plaintiffs received a nearly identical letter stating that their home would be sold at foreclosure on May 9, 2012.  (Compl. ¶ 44.)  A true copy of the letter referred to, dated April 12, 2012, sent by SBA to Plaintiffs is attached hereto as **Exhibit 4**.  This scheduled foreclosure likewise was cancelled.

---

[1] The Complaint references a number of documents that are not attached as exhibits.  To provide the Court with a full record on which to make a ruling, these documents are attached hereto.  In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice.  *See Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396-97 (4th Cir. 2006) (noting that there are exceptions to the rule that a court may not consider documents outside of the complaint, including that the court may consider documents central to the plaintiff's claim and documents sufficiently referred to in the complaint so long as the authenticity of those documents is not disputed).

15.     The Complaint alleges that Wells Fargo was never a creditor to whom the debt was owed, but merely the loan servicer.  (Compl. ¶ 46.)  Further, the Complaint makes the conclusory allegation that the Note "was never lost, misplaced or destroyed."  (Compl. ¶ 47.)

16.     Finally, the Complaint alleges – without any further factual elaboration – that Defendants made multiple attempts to communicate directly with the Plaintiffs despite actual knowledge that Plaintiffs were represented by counsel.  (Compl. ¶ 50.)

17.     The FHA insures loans made by lenders to qualifying homebuyers.  The FHA is part of the Department of Housing and Urban Development ("HUD").  (Compl. ¶ 19.)

18.     HUD has identified servicing practices that it considers acceptable for mortgages it insures.  (Compl. ¶ 20.)  Before initiating foreclosure, the mortgagee must ensure that all servicing requirements have been met.  24 C.F.R. § 203.606(a).

19.     HUD's servicing regulations require that "*[i]f default occurs in a repayment plan arranged other than during a personal interview*, the mortgagee must have a face-to-face meeting with the mortgagor or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced."  24 C.R.R. § 206.604(b) (emphasis added); Compl. ¶ 23.)

20.     Wells Fargo has multiple offices within 200 miles of the Plaintiffs and their home. (Compl. ¶ 25.)

21.     According to Plaintiffs, no "entity has complied with the above alleged regulatory requirements.  No face-to-face meeting has been attempted."  (Compl. ¶ 27.)

22.     Plaintiffs make the factually unsupported allegation that Defendants "are aware that Wells Fargo and Defendants' other mortgage company clients do not comply with this FHA

requirement" and have not "regularly complied with such requirement for a Virginia FHA mortgage during the previous 5 years." (Compl. ¶ 29.)

23.     On April 20, 2012, the Supreme Court of Virginia issued its opinion in *Matthews v. PHH Mortgage Corp.*, holding that the requirements of 24 C.F.R. § 203.604 are incorporated into the deed of trust and are conditions precedent to foreclosure. (Compl. ¶ 26). 283 Va. 723, 735, 724 S.E.2d 196 (2012). A copy of the Virginia Supreme Court's opinion is attached hereto as **Exhibit 5**.

24.     On May 8, 2012, Plaintiffs filed this Complaint asserting five separate causes of action against Defendants Professional and SBA.[2]

25.     Counts I and II seek to certify a class of individuals defined as:

> All natural person mortgagors to an active Deed of Trust that was insured by the Federal Housing Administration and/or the Department of Housing and Urban Development, securing a mortgage loan upon real property located in the Commonwealth of Virginia and within 200 miles of a branch office of the loan's servicer, to whom on any date after May 7, 2011 Defendants have mailed and/or have publically advertised a notice of foreclosure sale.

(Compl. ¶¶ 52, 68.) Excluded from the class definition are any consumers against whom foreclosure has been completed.

26.     Counts I and II both allege that the requirements of Rule 23(a) have been met with respect to numerosity, predominance, typicality and adequacy. (Compl. ¶¶ 53-56; 69-72.) Although not entirely clear, Counts I and II appear to be based on Plaintiff's contentions that SBA's servicer clients "systematically ignore the FHA 'face-to-face' meeting requirements

---

[2] The night before it was filed with this Court, the Complaint was sent via email to counsel for Defendants, along with a Motion for Preliminary Injunction and Memorandum in Support, together with exhibits and a proposed order. However, despite representing to counsel for Defendants that it had been sent to the Court for filing and making multiple requests for hearing dates, Plaintiffs did not file the Motion for Preliminary Injunction with the Court.

before commencing foreclosure." (*See* Compl. ¶¶ 54(b), 70(e) setting forth alleged common questions of law and fact).[3]

27.     Count I asserts a claim for "Declaratory Judgment and Equitable Relief" based on the alleged failure of Plaintiff's loan servicer to conduct face-to-face meetings with Plaintiffs prior to referring their Loan for foreclosure.  (Compl. ¶ 59.)  Plaintiffs seek the entry of a permanent injunction prohibiting Defendants from proceeding with foreclosure "until and unless they have received notice that the FHA face-to-face requirement has been met" and prohibiting Defendants from "communicating directly with consumers who [sic] they have knowledge are then represented by counsel." (Compl. ¶ 27.)

28.     Count II seeks damages based on alleged violations of the Fair Debt Collection Practices Act ("FDCPA") because, allegedly, "Defendants threatened to take nonjudicial action to effect dispossession or disablement of the subject property at a time when they had and there was no present right to possession of the property claimed as collateral."   15 U.S.C. § 1692(f)(6)

29.     Counts III-V allege violations of various sections of the FDCPA based on Plaintiffs' contentions that (1) Defendants failed to properly disclose the name of the creditor to whom the debt was owed and/or misrepresented the name of the creditor, (2) falsely represented

_____

[3] The proposed class is not, however, limited to those individuals who did not receive face-to-face interviews.  Moreover, Plaintiffs' typicality allegations assert that Plaintiffs' claims are typical because they "received substantially similar initial correspondence and were not told the identity of the creditor to whom their debt was owed." (Compl. ¶¶ 55, 71.)  It is difficult to ascertain what relevance the failure to identify a creditor has to class claims involving the failure to conduct a face-to-face meeting.  Indeed, none of the supposed common questions of law and fact involve the failure to identify the creditor to whom the debt is owed.  Notably lacking is any allegation that Plaintiffs' claims are typical because Plaintiffs did not receive a face-to-face meeting.  Plaintiffs also seek injunctive relief in Count I to prohibit Defendants from contacting class members who are known to be represented by counsel.  However, this contention is not included in any of the alleged common questions of law and fact, nor is the class defined in a manner so as to include only those individuals so contacted.  Indeed, the class claims are such a muddle of contradicting facts, legal allegations and relief that is nearly impossible to determine precisely the class Plaintiffs seek to certify.

that the note was unavailable, and (3) communicated with Plaintiffs when Defendants knew they were represented by counsel.  (Compl. ¶¶ 77-83.)

30.     Defendant SBA files this Motion to Dismiss because the Complaint is woefully lacking in any factual allegations that would support any plausible claim or cause of action against the law firm employed by the lender, its successors and/or assigns, solely for purposes of carrying out the directions of the lender to institute foreclosure proceedings under the Deed of Trust.

## III.   ARGUMENT

### A.    Standard of Review

A complaint must be dismissed if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Although the Court must accept well-pled allegations in Plaintiffs' Complaint as true, it is not required to accept conclusory factual allegations, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979), and cannot assume that "the [plaintiff] can prove facts which [he or she] has not alleged." *Orcilla v. Bank of Am., N.A.*, 2011 U.S. Dist. Lexis 46639, 4-5 (N.D. Cal. Apr. 25, 2011) (quoting *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983)).  Nor is the Court required to consider unsupported legal conclusions or legal conclusions disguised as factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009); *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Schweikert v. Bank of America*, 521 F.3d 285, 288 (4th Cir. 2008); *Eastern Shore Markets v. J.D. Associates LTD*, 213 F.3d 175, 180 (4th Cir. 2000).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. 662, 129 S.Ct. at

1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*

Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). "When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* at 558 (citation omitted). In this case, the Complaint is lacking sufficient factual allegations – as opposed to conclusions and labels – to support any cause of action against SBA.

**B.**  **The Complaint Fails to Adequately Allege Claims for Relief Based on the Lack of a Face to Face Meeting.**

1.  SBA had no duty to Plaintiffs to determine whether a face-to-face meeting had occurred; therefore, any alleged failure to conduct such a meeting does not state a plausible cause of action against SBA.

Counts I and II, the class counts, appear to be based on Plaintiffs' contention that Wells Fargo could not initiate foreclosure proceedings against them unless and until it conducted a face-to-face meeting with them pursuant to 24 C.F.R. § 203.604(b). Notably, Plaintiffs do not appear to contend that it was SBA's obligation to conduct a face-to-face meeting with them, instead alleging – without any factual support – that SBA is "aware" that Wells Fargo does not comply with this requirement. (Compl. ¶ 29.)[4] Indeed, the HUD regulations require that the

---

[4] Plaintiffs do not allege that SBA was aware that Wells Fargo had not arranged a face-to-face meeting with Plaintiffs in this case, only that it was aware that Wells Fargo and other servicers

"*mortgagee* have a face-to-face interview with the mortgagor."  24 C.F.R. § 203.604(b).  SBA is a law firm; it is not the mortgagee, nor is it the servicer of the Loan (identified by Plaintiffs as Wells Fargo).  Thus, any liability appears based solely on Plaintiffs' contention that SBA had a duty to Plaintiffs to discover whether Wells Fargo had conducted a face-to-face interview with them.  *Cf., Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) (even where a borrower disputes a debt, under the FDCPA, verification merely requires that a debt collector confirm in writing the amount that the creditor is demanding, explaining "[c]ontrary to Appellants' contention, verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt.")

Unfortunately for Plaintiffs, SBA had no such duty.  The United States Court of Appeals for the Fourth Circuit and this Court have held that debt collectors are entitled to rely on the information provided to them by the client and that the FDCPA does not require debt collectors to conduct an independent investigation of such information.  *Amond v. Brincefield, Hartnett & Assocs., P.C.*, 1999 U.S. App. LEXIS 4815, *7-9 (4th Cir. Va. Mar. 22, 1999) (dismissing plaintiff's claim that the debt collector was not entitled to rely on the bank's statement of amount); *McLean v. Ray*, 2011 U.S. Dist. LEXIS 53663, 17-18 (E.D. Va. May 18, 2011) (holding that the debt collector could rely on the creditor's representations regarding the debt).  Federal courts in other jurisdictions have consistently reached the same conclusion.  *See, e.g., Randolph v. IBMS, Inc.*, 368 F.3d 726 (7th Cir. 2004) (holding that "Courts do not impute to debt collectors other information that may be in creditors' files-for example, that debt has been paid or was bogus to start with"); *Ducrest v. Alco Collections*, 931 F.Supp. 459, 462 (M.D.La.1996)

---

have not "regularly complied with such a requirement" during the past five years.  (Compl. ¶ 29.)

("[t]he FDCPA does not require an independent investigation of the information provided by clients when a debt collector tries to collect a debt, nor does it require the debt collector to dispute the creditor's construction of a contract.").   Although creditors may possess additional information regarding the loan, the FDCPA does not automatically impute such knowledge to debt collectors.   *See, e.g., Lynch v. Nelson Watson & Assocs., LLC*, Case No. 10-cv-2025, 2011 U.S. Dist. LEXIS 66031 (D. Kan. June 21, 2011); *see Amond*, 1999 U.S. App. LEXIS 4815 at *8 (holding that even the debt collector's status as an attorney does not add a requirement of independent analysis for each aspect of the creditor's claim).[5]   Accordingly, Defendant SBA cannot be held liable for failing to conduct an independent investigation to determine whether Wells Fargo had conducted a face to face meeting with the Plaintiffs.

> 2.    <u>Wells Fargo had no obligation to have a face-to-face meeting with Plaintiffs; thus, any alleged failure to do so does not state a plausible claim for relief against Professional.</u>

In the Complaint, although they do not directly make the allegation, Plaintiffs apparently contend that Wells Fargo had an obligation to conduct a face-to-face meeting with them. (Compl. ¶¶ 23-27) (partially quoting 24 C.F.R. § 203.604(b) and alleging that Wells Fargo has

---

[5] Moreover, under Virginia law, "'[t]he powers and duties of a trustee in a deed of trust, given to secure the payment of a debt, are limited and defined by the instrument under which he acts.'" *Warner v. Clementson*, 254 Va. 356, 361, 492 S.E.2d 655, 657 (1997) (quoting *Powell*, 179 Va. at 174, 18 S.E.2d at 263); *see also Horvath v. Bank of New York, N.A.*, 2010 U.S. Dist. LEXIS 19965, at *1 (E.D. Va. Jan. 29, 2010), *aff'd*, 641 F.3d 617 (4th Cir. 2011) ("Under Virginia law, however, a trustee under a deed of trust has no such duty of diligence, and trustees only owe duties listed in the deed of trust."); *Carter v. Countrywide Home Loans, Inc.*, 2008 U.S. Dist. LEXIS 67014, at *11 (E.D. Va. Sept. 3, 2008) (dismissing claim for breach of fiduciary duty against trustee because plaintiffs' "claim fail[ed] to set forth any fiduciary duties arising pursuant to the deed of trust"); *Wolf v. Federal National Mortgage Ass'n*, 2011 U.S. Dist. LEXIS 135259 (W.D. Va. Nov. 23, 2011) (any duty owed to the mortgagor does not exist absent an agreement between them); *Fleet Fin. v. Burke & Herbert Bank and Trust*, 27 Va. Cir. 98, 1992 WL 884461, at *3 (Va. Cir. Ct. 1992) ("The Court finds on this issue that Virginia law does not impose fiduciary duties on trustees beyond those duties owed to the parties under the deed of trust."). The Deed of Trust in this case imposed no duty on the substitute trustee to determine whether Wells Fargo had arranged a face-to-face meeting with Plaintiffs in this case.

offices within 200 miles of Plaintiffs' residence but did not conduct a face-to-face interview with them). Indeed, the premise of the class action appears to be that the putative plaintiffs are a class of individuals with whom mortgage servicers have failed to have a face-to-face meeting and that Plaintiffs' claims are typical. However, Plaintiffs' conveniently fail to include the pertinent language of the HUD regulations concerning face-to-face meetings. Specifically, the regulation provides that: "*If default occurs in a repayment plan arranged other than during a personal interview*, the mortgagee must have a face-to-face meeting with the mortgagor." 24 C.F.R. § 203.604(b) (emphasis added). As Chief Justice Kinser observed in her concurrence in *Mathews*, the face-to-face interview requirement is necessary only if default occurs in a repayment plan arranged other than during a personal interview. 283 Va. 723, 743, 724 S.E.2d 196 (Kinser, C.J., concurring).

The Complaint in this case does not allege that Plaintiffs were "in a repayment plan arranged other than during a personal interview" at the time they defaulted on the Loan. Accordingly, Plaintiffs have not alleged facts sufficient to demonstrate that Wells Fargo was required to have a face-to-face meeting with them prior to instituting foreclosure proceedings. As Chief Justice Kinser noted,

> the Mathewses . . . did not allege that they ever defaulted on "a repayment plan arranged other than during a personal interview." Instead, by omitting relevant portions of 24 C.F.R. § 203.604(b), the Mathewses were able to allege that the mortgagee failed to conduct a face-to-face meeting with them 30 days before commencing foreclosure, a requirement not set forth in the plain terms of that subsection. Thus, in my view the Mathewses failed to state a cause of action upon which relief could be granted.

*Id.*, at 743-44, 724 S.E.2d 196 (internal citations omitted).[6] Plaintiffs in this case similarly omitted the relevant sections of the regulation. As in *Mathews*, because they failed to make any

---

[6] In *Matthews*, because the Defendants failed to assert the pleading deficiency as a ground for

allegation that they defaulted on a repayment plan arranged other than during a personal interview, Plaintiffs have failed to plead that any such meeting was required and, likewise, to state a claim on which relief can be granted.   Accordingly, Counts I and II should be dismissed with prejudice.

3.      <u>Plaintiffs' fail to state a claim for declaratory relief in Count I.</u>

Count I seeks declaratory relief in the form of an order from this Court prohibiting Defendants from proceeding with foreclosure "until and unless they have received notice that the FHA face-to-face requirement has been met" and prohibiting Defendants from "communicating directly with consumers who [sic] they have knowledge are then represented by counsel." (Compl. ¶ 67.)   In essence, then, Plaintiffs seek to have this Court declare enter an order requiring Defendants to comply with the law.  Because this is not the proper use of a declaratory judgment claim, and because there is no case or controversy at issue here, Plaintiffs' claim must be dismissed.

A declaratory judgment may be issued only if the Article III case-or-controversy requirements are satisfied. *See* 28 U.S.C.A. § 2201(a) (West 1994) (stating that "[i] n a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration"); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S. Ct. 461, 81 L. Ed. 617 (1937) (explaining that the "actual controversy" requirement is synonymous with the Article III requirements). "Although declaratory judgments are frequently sought in advance of the full harm expected, they must still present a justiciable controversy rather than abstract, hypothetical or contingent questions." *St. Thomas-St. John Hotel & Tourism Ass'n v. United States Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000)

---

demurrer, the trial court was unable to consider the issue and the Virginia Supreme Court likewise could not address the issue. *Id.*, p. 28.

(internal quotation marks omitted)).  In a capsule, there must be a dispute (no moot, unripe, or "political" questions) between the parties.  More than seventy years ago, the Supreme Court stated the Article III test for declaratory judgment actions:

> The question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Casualty Co. v. Pacific Coal and Oil Co.*, 312 U.S. 270, 273 (1941).  A declaratory judgment action is appropriate when a judgment "will serve a useful purpose in clarifying and settling the legal relations in issue" and when it will afford relief from "the uncertainty, insecurity and controversy giving rise to the proceeding."  *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004).  No controversy exists in this case; SBA does not dispute that the Virginia Supreme Court has determined that the requirements of 24 C.F.R. § 203.604 are incorporated into and constitute conditions precedent to foreclosure under FHA deeds of trust. Likewise, Professional does not dispute the validity of provisions of the FDCPA prohibiting certain contacts with borrowers represented by counsel, although they do not apply in this case. (*See* Section III(D)(4), *infra*.)  Despite Plaintiffs' assertion of bald legal conclusions, there simply is no uncertainty as to the legal rights of the parties that this Court can resolve and Plaintiffs fail entirely to identify the case or controversy at issue here.   Count I must be dismissed.

### D.    The Complaint Fails to State Claims for Violations of the FDCPA

Counts III through V allege individual violations of the FDCPA, based on Plaintiffs assertions that the letters sent to them by SBA improperly identified the creditor as Wells Fargo, stated that the note was unavailable as of the date of the June 15, 2011 letter, and

constituted improper contacts with them at a time SBA knew they were represented by counsel. The Complaint fails to allege facts supporting any of the alleged violations of the FDCPA.

      1.    <u>As the loan servicer, Wells Fargo was properly named the Plaintiffs' creditor pursuant to the FDCPA</u>.

Plaintiffs claim that, because U.S. Bank National Association, as co-trustee for the GOVERNMENT LOAN SECURITIZATION TRUST 2011-FV1, was identified as the note holder or agent for the note holder in correspondence sent to them by SBA in January and April of 2012, whereas Wells Fargo was identified as the creditor in June 2011 correspondence, Professional violated 15 U.S.C. § 1692g(a)(2) by failing to disclose the name of the creditor to whom the debt was owed. (Compl. ¶ 77.) In essence, Plaintiffs claim that Wells Fargo, their loan servicer, was improperly identified as the creditor on SBA's initial communication. Plaintiffs' contention fails however, because a loan servicer fits the definition for a "creditor" under the FDCPA.[7]

As an initial matter, a loan servicer typically is a "creditor," and not a debt collector, because it obtains regular payments from the consumer. Federal law describes Wells Fargo's servicing responsibility to include,

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any mortgage loan… and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the mortgage servicing loan documents or servicing contract.

12 U.S.C. § 3500.2(b); *see also Larota-Florez v. Goldman Sachs Mortgage Co.*, 719 F.Supp 2d 636, 640-41 (E.D. Va. 2010), *aff'd per curium* at Appeal No. 10-1523 (4th Cir. July 28, 2011) ("As servicer, Litton has the *right to collect payments* on behalf of the holder and the right to

---

[7] Plaintiffs claim also fails because there is no allegation that Professional sent any communication to Plaintiffs. As noted above, the Complaint identifies only letters sent by SBA.

foreclose upon default.") (emphasis added); *CWCapital Asset Management, LLC v. Chicago Properties, LLC*, 610 F.3d 497, 500 (7th Cir. 2010) (explaining the necessary role of servicers: "[e]very mortgage needs someone to collect the borrower's monthly payments of principal and interest; make sure the property is properly insured; attend to any default, either by suing the borrower and if necessary foreclosing the mortgage or by modifying the mortgage to make its terms less onerous to the borrower; and discharge the mortgage when it is paid off[.]").

A "creditor" under the FDCPA is defined as "any person who offers or extends credit creating a debt or *to whom a debt is owed*, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4) (emphasis added). Notably, the FDCPA does not define creditor to be the owner of the loan. Thus, by statute the term "creditor" includes assignees who obtained their rights prior to a default. *See* 15 U.S.C. §1692(a)(4). Because federal law recognizes that the consumer directly owes the debt to the servicer, the servicer's status as "debt collector" versus "creditor" is determined by the loan's default status at the time it acquires its servicing rights. *See* 15 USC § 1692a(4). Plaintiffs do not allege that the Loan was in default when Wells Fargo obtained its servicing rights. Therefore, Wells Fargo is a "creditor" within the meaning of the FDCPA. *See Martin v. Select Portfolio Servicing*, 2008 U.S. Dist. LEXIS 16088, at *9 (S.D. Ohio Mar. 3, 2008) ("[a]n entity which does not own the loan but merely "services" the loan is treated as a "creditor" and generally is not subject to the FDCPA." (citations omitted)); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996) (where debt was assigned for servicing before default of the loan, assignee is exempt from the Act because the assignee becomes a creditor and is collecting its own debt); *Bilal v. Chase Manhattan Mort. Corp.*, 2006 U.S. Dist. LEXIS 39040,

at *9-11 (N.D. Ill. June 13, 2006) (granting mortgage servicer's motion to dismiss because the servicer was a creditor, not a debt collector, under the FDCPA); *Glazer v. Chase Home Fin., LLC*, 2009 U.S. Dist. LEXIS 126369, at *20-21 (N.D. Ohio Jan. 21, 2010) ("Therefore, Chase, as the servicer prior to default, should be treated as a 'creditor' and not subject to the FDCPA.").

Moreover, at least four courts of appeals have concluded that a servicing agent for a mortgage loan "obtains" the debt even though the bank owns the note. *Carter v. AMC, LLC*, 645 F.3d 840, 843 (7th Cir. 2011); *Bailey v. Security National Servicing Corp.*, 154 F.3d 384, 387-88 (7th Cir. 1998); *Alibrandi v. Financail Outsourcing Services, Inc*¸ 333 F.3d 82, 84-85 (2d Cir. 2003); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 107 (6th Cir. 1996); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985). "[A]lthough one usually 'obtains' a debt by purchasing it, that is not the only way to do so. A servicing agent 'obtains' a debt in the sense that it acquires the authority to collect the money on behalf of another." *Carter*, 645 F.3d. at 844. Thus, Wells Fargo – the servicer who acquired its rights when the Loan was not in default – was not only tasked by federal law to collect loan payments from the Plaintiffs, but also "obtained" the debt from the debt's owner and had the right to bring suit to collect the debt in its own name. Because Wells Fargo is the entity to whom Plaintiffs are obligated to pay their mortgage debt, Wells Fargo fits the FDCPA's definition of a creditor. Accordingly, Professional cannot be liable for violations of the FDCPA based on SBA's letter identifying Wells Fargo as the creditor.

> 2.   Plaintiffs' claim that SBA falsely identified Wells Fargo as creditor is belied by Wells Fargo's status as loan servicer and, in any event, is not a material misrepresentation that caused Plaintiffs any damage.

Plaintiffs also claim that SBA violated 15 U.S.C. § 1692e by "falsely" identifying Wells Fargo as the creditor in June 2011 correspondence. As set forth more fully above, because

Plaintiffs do not dispute that Wells Fargo was the loan servicer, their contentions fail.  Wells Fargo is the loan servicer and, as Plaintiffs' admit, it is the proper party to whom payments are to be made and to whom payments are owed.  (Compl. ¶ 9.)  Indeed, Wells Fargo is the entity with whom Plaintiffs negotiated a loan modification and with whom they pursued loss mitigation options.  (Compl. ¶¶ 10, 13.)  Because Wells Fargo is the entity to whom Plaintiffs are obligated to pay their mortgage debt, Wells Fargo falls within the FDCPA's definition of a creditor and any representation that Wells Fargo is the creditor is not a misrepresentation under the FDCPA.

Moreover, the Fourth Circuit applies the "least sophisticated consumer" standard to determine whether the text of a letter violates the FDCPA.  *Morgan v. Credit Adjustment Bd.*, 999 F. Supp. 803, 805 (E.D. Va. 1998).  "While protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding …."  *Id*.  Under this standard, the "creditor to whom the debt is owed" is simply the person to whom the debtor is required to make payments.  This interpretation is consistent with an unsophisticated consumer's understanding of the mortgage lending industry, as well as the purpose of including the name of the creditor to whom the debt is owed in the letter, which is specifically to permit a debtor to make-up for his delinquency.  *See, e.g.*, *Luzinski v. Arrow Fin. Servs., LLC.*, No. 05-cv-1322, 2007 U.S. Dist. LEXIS 71788, at *3 (E.D. Wis. Sept. 26, 2007) (dismissing plaintiff's claims holding a dunning letter that identifies the servicer to whom the debtor's payments are made does not violate the FDCPA).

Consistent with the express purpose of the FDCPA to eliminate deceit and confusion of consumers, courts hold that the debt collector is not required to follow the FDCPA language blindly when such blind or hyper-technical compliance results in meaningless and confusing

representations to consumers.  *See, e.g., Shimek v. Weissman, Nowack, Curry & Wilco, P.C.*, 323 F. Supp. 2d 1344, 1348-1349 (N.D. Ga. 2003) (concluding that an "an offer to provide information about a non-existent original creditor would in itself be a violation of the FDCPA because it would mislead consumers"); *accord Volden v. Innovative Fin. Sys.*, 440 F.3d 947, 956 (8th Cir. S.D. 2006) (holding that the debt collector did not violate FDCPA when it failed to include the required disclosures regarding the name and address of the original creditor because the inclusion of the FDCPA-required language would be "technical," "meaningless," and "would have provided absolutely no useful information [to the consumer]").  This is especially true in cases, such as this one, where the Note has been securitized and the current investor is a trust.  *See, e.g., Spangler v. Conrad*, No. 2:08-cv-234, 2010 U.S. Dist. LEXIS 57120, at *9 (E.D. Tenn. June 9, 2010) (holding that providing the name of the "true creditor …would have been confusing to any consumer, sophisticated or not, since [debtor] had dealt only with First Tennessee Bank. … Including a reference to First Tennessee Bank was *not* violative of § 1692g(a)(2) under these circumstances.").  Accordingly, SBA did not violate the FDCPA as a result of the June 2011 letter identifying Wells Fargo as the creditor.

Moreover, any such alleged misrepresentation cannot have been material and Plaintiffs do not allege that they suffered any damages as a result.  Indeed, Plaintiffs fail entirely to assert that they relied in any way on the alleged misrepresentation to their detriment.  Instead, they continued to deal with Wells Fargo as their creditor and never disputed Wells Fargo's right to collect the debt.  Thus, even if the statement was false, the alleged misrepresentation that Wells Fargo was the creditor is immaterial.  Accordingly, Plaintiffs have no claim under the FDCPA, and Count IV should be dismissed.

3. <u>Defendants' alleged misrepresentation concerning the availability of the Note is immaterial</u>.

In Count IV, Plaintiffs also assert that SBA misrepresented that the original note was unavailable in its June 15, 2011 letter and therefore Defendants violated 15 U.S.C. §1692e. (Compl. ¶ 79). According to Plaintiffs, this representation was false, suggesting that the original note was available to Wells Fargo. (Compl. ¶ 47.) Unclear is how such "misrepresentation," if true (for purposes of argument), could harm them. If it had been in possession of the original Note at the time of the letter, as holder or non-holder in possession with the rights of holder, *see* Va. Code §8.3A-301(ii), Wells Fargo would have been entitled to enforce the Note, and Plaintiffs would not have been afforded the right under Va. Code 55-59.1(B) to seek adequate protection. Thus, the notice of unavailability afforded the Plaintiffs *greater* rights than they would have had if the note had been available.

Specifically, under Virginia Code §55-59.1(B), when the original promissory note is unavailable, the trustee is afforded a safe harbor from challenges to the sale if the beneficiary notifies the borrower of such unavailability, and thereafter provides the trustee an affidavit to that effect. *See* Va. Code §55-59.1(B). Under the statute, if the borrowers believe that they may be subject to more than one claim under the promissory note, they can petition the Court for adequate protection. Absent a request and grant of adequate protection, where an affidavit is furnished to the trustee, Section 55-59.1 provides that "[i]f the trustee proceeds to sale, the fact that the instrument is lost or cannot be produced shall not affect the authority of the trustee to sell or the validity of the sale." *Id.* The trustee does not furnish the notice; it is furnished by the beneficiary, or on its behalf. The affidavit referred to is provided to the trustee, solely to allow the trustee a safe-harbor against foreclosure challenges. It is not furnished to the borrower, nor is it required to be furnished to the borrower at the time the "*beneficiary has given written notice to*

*the person required to pay the instrument that the instrument is unavailable.*"  Va. Code §55-59.1(B) (emphasis added).  Moreover, under subsection (C) of the statute: "Failure to comply with the requirements of notice contained in this section shall not affect the validity of the sale, and a purchaser for value at such sale shall be under no duty to ascertain whether such notice was validly given."  Va. Code §55-59.1(C).

Accordingly, to the extent that Plaintiffs complain that they received a notice that the Note was unavailable, they were provided the opportunity to dispute Defendants' right to foreclose on behalf of Wells Fargo (if they truly believed that it was not the correct entity) by petitioning the circuit court for adequate protection.  Tellingly, Plaintiffs never sought such a remedy.  Nor have they alleged reliance or even the potential for damages arising from the statement.  Consequently, the alleged "misrepresentation" is neither material, nor misleading in any way.

The Fourth Circuit recently acknowledged that the materiality standard applies to allegations of false statements under the FDCPA by alleged debt collectors:

> Although Congress did not expressly require that any violation of § 1692e be material, courts have generally held that violations grounded in "false representations" must rest on material misrepresentations. For example, analyzing an alleged violation of § 1692e(2), which prohibits a "false representation of the character, amount, or legal status of any debt," the Seventh Circuit reasoned that the Act "is designed to provide information that helps consumers to choose intelligently," and thus held that because "[a] statement cannot mislead unless it is material, . . . a false but non-material statement is not actionable."

*Warren v. Sessoms & Rogers, P.A.*, 2012 U.S. App. Lexis 552, 18-19 (4th Cir. 2012) (citations omitted); *see also Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010) ("false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f."); *Miller v. Javitch, Block & Rathbone*,

561 F.3d 588, 596 (6th Cir. 2009); *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757-59 (7th Cir. 2009); *Diaz v. United Collection Bureau*, 2011 U.S. Dist. Lexis 64815 (N.D. Cal. June 16, 2011) ("False but non-material misrepresentations are not likely to mislead the least sophisticated consumer, and therefore are not actionable under the FDCPA."); *Stewart v. Bierman*, 2012 U.S. Dist. LEXIS 64355 (D. Md. May 8, 2012) ("This Court is persuaded that the Fourth Circuit's citations of Hahn, Donohue, and Miller leads to the conclusion that in order to overcome a motion to dismiss a FDCPA claim that involves a false representation, a complaint 'must contain sufficient factual matter, accepted as true,' that the alleged false representations were material.")  Thus, even if the Note was available at the time, the alleged statement that the note was unavailable is immaterial, and in fact afforded Plaintiffs greater rights that they otherwise would have had.  Accordingly, Plaintiffs have no claim under the FDCPA, and Count IV should be dismissed.

> 4.   Plaintiffs fail to allege any facts supporting their claim that SBA made improper or illegal contact with Plaintiffs

In Count V of the Complaint, Plaintiffs contend that Defendants violated 15 U.S.C. § 1692c(a)(2) by communicating with them or attempting to communicate them when Defendants knew they were represented by counsel.  The only allegation in the Complaint supporting this cause of action is Plaintiffs' conclusory and unsupported allegation that "Defendants made multiple attempts to communicate directly with the Plaintiffs" and did so "despite actual knowledge that Plaintiffs were represented by their own counsel."  (Compl. ¶ 50.)  As the United States Supreme Court has held, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*  Plaintiffs' Complaint contains nothing more than the mere conclusory

statement that Defendants violated the FDCPA by contacting Plaintiffs; it provides no factual support for that contention. On that ground alone, Count V should be dismissed for failing to state a claim on which relief can be granted.

To the extent that Count V is intended to be premised on the pre-foreclosure letters sent by SBA to Plaintiffs, Plaintiffs' claims fail because SBA was required by law to send the letters as a condition to foreclosing on the Loan and/or by HUD regulations. *See Vitullo v. Mancini*, 684 F. Supp. 2d 747, 758-759 (E.D. Va. 2010) ("FDCPA does not prohibit debt collectors from foreclosing on debtors' properties pursuant to state law, and nothing in the FDCPA authorizes debt collectors to violate or fail to comply with state foreclosure laws.") (*citing Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1210-11 (D. Or. 2002)).[8]

Specifically, pursuant to Virginia Code § 55-59.1(A), in addition to the advertisement required by Virginia Code § 55-59.2, the trustee or shall given written notice of date and place of any proposed sale in execution of a deed of trust, "which notice shall include either (i) the instrument number or deed book and page numbers of the instrument of appointment filed pursuant to § 55-59, or (ii) said notice shall include a copy of the executed and notarized appointment of substitute trustee by personal delivery or by mail to (i) the present owner of the property to be sold at his last known address as such owner." The letters sent on February 16, 2012 and April 12, 2012 both were sent pursuant to Virginia Code § 55-59.1 and included the notice of foreclosure sale. (**Exhibits 3 and 4**). Moreover, the letter sent on January 5, 2012, was a HUD occupancy letter required by 24 C.F.R. § 203.675 (requiring the mortgage to notify the mortgagor and each head of household who is occupying a unit of the property of its potential

---

[8] In *Vitullo*, the Court also cited the Federal Trade Commission Report that "cease communications provision in section 1692c(a) of the FDCPA does not prevent collectors or creditors from filing suit against the consumer, and thus would not foreclose pursuit of state foreclosure remedies." 684 F. Supp. 2d at 758-759.

acquisition by HUD).  (**Exhibit 2**).[9]  Accordingly, these letters cannot form the basis of a claim under 15 U.S.C. § 1692c and Count V must be dismissed.

## VI.   CONCLUSION

For the reasons set forth more fully above, the Complaint fails to allege facts supporting any of the causes of action asserted against Defendant Law Offices of Shapiro, Alt & Brown, LLP.  SBA respectfully requests that Complaint be dismissed as to it, that it be awarded its fees in the action, and for such other relief as may be just and proper.

---

[9] Moreover, none of the referenced letters demand payment, and therefore cannot form the basis of a FDCPA claim.  *See Blick v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 41266, 26-27 (W.D. Va. Mar. 27, 2012) ("Like the defendant in *Blagogee*, BGWW neither made an express demand for payment nor provided Plaintiffs with any information regarding who was claiming current ownership of the debt or how the debt could be satisfied.  On the contrary, BGWW's notice to Plaintiffs merely informed Plaintiffs that a foreclosure would proceed 14 days from the date of the letter's mailing, and alerted Plaintiffs that they could petition the circuit court if they believed they may be subject to a claim by a person other than the Beneficiary to enforce the note and the deed of trust. I am sufficiently convinced that BGWW's letter is not an attempt to collect a debt for purposes of the FDCPA. Plaintiffs, then, have failed to plead sufficient facts that would allow their claims to go forward, and I will dismiss FDCPA claims against BGWW.") *citing Blagogee v. Equity Trs., LLC*, No. 1:10-CV-13, 2010 U.S. Dist. LEXIS 114233, 2010 WL 2933963, at *5 (E.D. Va. July 26, 2010)).

LAW OFFICES OF SHAPIRO, BROWN & ALT, LLP


By_____/s/Megan E. Burns_____
                    Of Counsel


John C. Lynch (VSB No. 39267)
Megan E. Burns (VSB No. 35883)
Ethan G. Ostroff (VSB No. 71610)
Counsel for Defendants
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7765
Facsimile:  (757) 687-1504
E-mail: john.lynch@troutmansanders.com
Email: megan.burns@troutmansanders.com
Email: ethan.ostroff@troutmansanders.com


Bizhan Beiramee, Esq., (VSB #50918)
Matthew D. Cohen, Esq. (VSB #72097)
Beiramee & Cohen, P.C.
6663 B Old Dominion Drive, Third Floor
McLean, Virginia 22101
Phone: (703) 483-9600
Fax:    (703) 483-9599
Email: bbeiramee@beiramee.com


*Co-counsel for Defendant Law Offices of Shapiro, Brown & Alt, LLP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of June, 2012, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing (NEF) to the following:

Leonard A. Bennett, Esq.
Susan M. Rotkis, Esq .
CONSUMER LITIGATION ASSOC., P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA 23601

Kristi C. Kelly, Esq.
Scott A. Surovell, Esq.
SUORVELL ISAACS PETERSON & LEVY, PLC
4010 University Drive, 2nd Floor
Fairfax VA 22030

Dale W. Pittman, Esq.
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA  23803

Matthew J. Erausquin, Esq.
CONSUMER LITIGATION ASSOC., P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314

*Counsel for Plaintiffs*

By:_____/s/ Megan E. Burns_____

Megan E. Burns (VSB No. 35883)
Counsel for Defendant Shapiro, Brown & Alt, LLP
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7778
Facsimile:  (757) 687-1552
Email: megan.burns@troutmansanders.com